152    565
102a  ¹211

## THE STATE v. JACOBS, Appellant.

### Division Two, December 12, 1899.

1. **Criminal Law**: INSUFFICIENCY OF EVIDENCE. The appellate court will not interfere with the action of the trial court in overruling a motion for a new trial, on the sole ground that the verdict is against the weight of the evidence. It is only where there is no substantial evidence to support the verdict that it will interfere.

2. **Homicide**: DEFINING "JUSTIFIABLE." In a homicide trial it is not necessary to define the word "justifiable" as usually used in the instructions for the State.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

AFFIRMED.

I. B. KIMBRELL for appellant.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1)    The evidence is unquestionably sufficient to warrant the verdict found.    The killing is admitted.    The only point of contention being as to whether it was done in self-defense. If not in self-defense, was it committed under such circumstances as would warrant a verdict of guilty of murder in the first degree as defined in the instructions, or murder in the second degree as also defined?    (2)    The technical terms used in the indictment and repeated in the instructions are properly defined.    State v. Silk, 145 Mo. 240; State v. Gee, 85 Mo. 647; State v. Fairland, 121 Mo. 134; State v. Young, 119 Mo. 495; State v. Kindred, 148 Mo. 270.

BURGESS, J.—On the twenty-first day of November, 1898, the defendant was convicted in the criminal court of Jackson county of murder in the second degree for having at said county on the first day of May, 1898, shot and killed with a pistol one Frank Smith.

The defense interposed was that of self-defense.

After an unsuccessful motion for a new trial defendant appeals.

At the time of the homicide Jacobs lived with his wife at Liberty in Clay county, but his wife had some time before that gone to Kansas City, and defendant had gone to that city for the purpose of taking her home.    He arrived there at about three o'clock in the afternoon.    And at about 8:30 of the same evening he went to the bridge depot of the Hannibal & St. Joseph Railroad, where he expected to meet her, and take the first train for home..    When he got to the depot he found his wife there in company with a bawd, and three men, some of whom were of bad repute.    He approached his wife, and

asked her what she was doing there, "when she asked him not to shoot her." Deceased then told him not to hit her. Upon this remark defendant fired two shots at his wife, missing her, and three shots at deceased, one of which took effect, resulting in his death about five days thereafter.

One witness testified that when defendant approached the depot he had a pistol in his hand. Defendant admitted the shooting, but claimed to have done it in self-defense. He testified that before he fired the fatal shot, the deceased put his hand in his pocket and drew out an open knife, and was in the act of cutting him at the time, and that as the deceased was in four feet of him he became alarmed for fear that he might be cut with the knife, and shot to protect himself. Deceased was of bad character, and had made threats against defendant.

The court instructed for murder in the first and second degrees, and upon self-defense.

The first assignment for error in the motion for a new trial is that the court erred in instructing the jury upon the part of the State. But a careful reading of the instructions has failed to convince us that there is any ground for this contention. The instructions are such as have been often approved by this court in similar cases, and, in so far as we have been able to discover, free from objection.

Nor is the objection that the court failed to instruct the jury upon questions of law arising from the evidence and necessary for the jury to know in order to arrive at a correct and just verdict, well taken, as those which were given covered every phase of the case, and nothing more was required.

As to the assignment with respect to the exclusion of competent and material evidence offered by defendant, we have been unable from an examination of the record to ascertain, wherein this was done, hence we conclude that this contention is not supported by the facts.

Another assignment is that the verdict is against the evidence in the case, but there is no merit in this contention.

The verdict was well warranted by the evidence; beside this court will not interfere with the action of the trial court in overruling a motion for a new trial upon the ground that the verdict is against the weight of the evidence alone.    It is only where there is no substantial evidence to support the verdict that it will interfere.

Nor did the court err in failing to define the word, "unjustifiably," as used in the State's sixth instruction, for the evidence conclusively showed the homicide to have been intentional and with malice, and that there was no justification or excuse for it.    It was, therefore, entirely unnecessary to define the meaning of the word.

There may be circumstances connected with a homicide, for instance, where the evidence tends to show that it was "justifiable" which would require a definition of the words "justifiable homicide" if those, or substantially the same words were used in other instructions in the same case, but under the circumstances, it was unnecessary in the case.    Moreover, the court's attention should have been called at the time to its failure to define the word if thought necessary, and exception saved to such failure.    This was not done.    [State v. Cantlin, 118 Mo. 100; State v. Paxton, 126 Mo. 500; State v. Schieller, 130 Mo. 510; State v. Nelson, 132 Mo. 184; State v. Hilsabeck, 132 Mo. 348.]

Finding no reversible error in the record, we affirm the judgment.

GANTT, P. J., and SHERWOOD, J., concur.