# WILLIAM TAUSSIG, Appellant, v. ANTON WIND, Respondent.

### St. Louis Court of Appeals, February 5, 1903.

1. **Appellate Court:** PRACTICE, APPELLATE: JUDGMENT: VERDICT: EVIDENCE. An appellate court will not disturb a judgment unless the verdict upon which it is based is entirely unsupported by substantial evidence.

2. **Action:** DAMAGES: ALLEGATIONS IN PETITION: PROOF. When, in an action by an owner of a building against the contractor for damages caused by the falling of plaster, the only allegations of the petition were that the material furnished was not good and that the work was not performed in a workmanlike manner, plaintiff was not entitled to recover if the falling of the plaster was caused by the too rapid drying, even though the drying was occasioned by defendant's failure to properly close doors and windows.

3. ———: ———: ———: WRITTEN CONTRACT: IMPLIED WARRANTY. In an action for the breach of a written contract, no recovery can be had for the breach of an implied warranty arising out of the contract.

4. **Action:** EVIDENCE: INSTRUCTION: HARMLESS ERROR: PLEADING: ISSUE. In an action by the owner of a building against the contractor who erected it, for damages alleged to have been caused by the contractor's failing to use proper materials in plastering, or to do the work in a workmanlike manner, the admission of evidence that defendant was not notified when the plaster fell off, nor requested to perform the work of replastering, was harmless, where the instructions directed the attention of the jury only to the specific issues presented by the pleadings.

Appeal from the St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

### STATEMENT.

This is an action brought upon a building contract of date May 5, 1899, whereby defendant agreed

Vol 98 mo app—9.

to erect for plaintiff, under the supervision of the architect of the latter, two detached brick dwelling houses in the city of St. Louis. The contract recites among other provisions, the following:

"Article 1. The contractor under the direction and to the satisfaction of Theo. Link, architect, acting for the purposes of this contract as the agent of the owner, shall and will provide all materials and perform all the work mentioned in the specifications and shown on the drawings prepared by said architect.

"Article 10. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except a final certificate or payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be acceptance of defective work or improper materials."

The specifications of the buildings erected provided in detail for the plastering work as follows:

"*Plasterer*. All stud-partitions and ceilings in each first, second and attic story, including stair-soffits, shall be lathed with seasoned white pine laths in a proper manner, breaking joint.

"All the above lathed work and the inside face of the brick walls in first, second and attic stories shall be plastered with lime mortar with two coat work to a smooth trowel finish."

The petition alleges that plaintiff performed the contract on his part, making payment to defendant of the contract price, but that defendant violated the contract, assigning as breaches the following: That the material furnished by defendant for plastering the buildings was not good and first-class material, but was inferior, defective and insufficient in quality, and that the defendant did not do the plastering in a good, skillful and workmanlike manner, and that by reason of the defective, inferior and insufficient materials used by defendant in plastering the buildings, and the

unskillful and unworkmanlike manner in which the plastering was done, the buildings became dangerous and unsafe as dwellings, and the plastering gave way. The answer admitted the execution of the contract, and that defendant was thereby required to plaster the houses and furnish the material therefor, but denied that by the terms of the contract defendant was required to perform the plastering in the manner alleged, and for affirmative defense the answer further set forth that defendant fully performed the contract, and upon the completion of the houses plaintiff, by his superintendent and agent, gave a final certificate to the effect that the work required to be done by defendant under the contract, had been fully performed according to its terms, and that final payment was then made by plaintiff to defendant for the erection of the houses, which were then accepted by plaintiff with full knowledge of the kind of material used and the manner in which the work was done in plastering the houses, and that whatever defects, if any, existed, either in the material used or in the workmanship of plastering the houses, were then and there waived by plaintiff.

In reply plaintiff denied the affirmative matter of defendant's answer. The evidence tended to show that in December, 1899, the houses were completed, and plaintiff's architect issued to defendant a final certificate of the completion of the contract, and plaintiff made final payment thereon to defendant of the balance of the contract price. In January, 1901, the plastering in both houses began to crumble and fall, and it became dangerous to occupy them, and to render them tenantable both houses had to be replastered. There was no dispute regarding the fact that the plastering fell, nor that the defect producing such result was a latent one. The evidence was conflicting regarding the causes of the infirmity in the plastering work, the plaintiff's testimony tending to show that the defect

was due to the failure of the workmen properly to mix the lime, sand and hair, with the result that the plaster was "too rich" in the language of the trade, to adhere to the walls.     The defendant's testimony tended to show that the material used in plastering the houses was neither defective, inferior nor insufficient, that the workmanship was skillfully and properly executed, but that the falling of the plaster was due to the extreme heat existing during the time when the work was done, which dried out the moist plaster too rapidly and consequently it crumbled and fell.

The specifications further provided that the contractor should have the care of the buildings, and whatsoever belonged thereto during the progress of their construction and until delivery to the owner, and should make good any damages caused either by accident or any other cause, and should close up all windows and doors with old sash, canvas or other suitable material, and there was testimony that during the extreme weather prevailing when the plastering was done, the openings of the whole building were not fully closed. The court refused all plaintiff's instructions, six in number, and also all those asked by defendant, but prepared and gave its own instructions, as follows:

"Under the contract of May 5, 1899, between the plaintiff, Wm. Taussig, and the defendant, Anton Wind, whereby Mr. Wind was to erect two houses for the plaintiff, it was the duty of the defendant in plastering the houses to plaster the first, second and attic stories with lime mortar, two coats worked to a smooth trowel finish, and to plaster each second story bathroom with cement mortar.

"In the fulfillment of this contract, it was Mr. Wind's duty to use such good material in his contract, and exercise such skill and workmanship in the performance of the work of plastering, as a man of reasonable skill and ability in the business of plastering would use and employ under the same or similar circum-

Taussig v. Wind.

stances; and if you believe from the evidence that the material used for the plastering of said houses was not as described in these instructions, but was defective, inferior and insufficient in quality, or that the defendant did not perform the work of plastering the walls in such a good, skillful and workmanlike manner, and that by reason of such defect or insufficient material, or by reason of such unskillful and unworkmanlike manner the plaintiff suffered damage, and that at the time of acceptance of work and payment therefor the plaintiff or his agents did not know of any defect in the plastering or by the exercise of reasonable diligence would not have known thereof, and made the final payments and accepted the work in ignorance, then your verdict should be for the plaintiff.

"If, on the other hand, you believe from the evidence that the defendant, in plastering such houses, used good lime mortar and cement as required by the contract, and such as a man of reasonable carefulness and ability in such business would under the same or similar circumstances have used, and that the defendant in the work of plastering the said houses performed the same in a skillful and workmanlike manner, the same as would be done by a man of reasonable skill under the same or similar circumstances, or that any damage to plaintiff, if such there be, was due to some other cause than defective material or unskillful workmanship, as above described; or if, from the evidence, you believe that the plaintiff or his agent, the architect, knew, or by the exercise of ordinary diligence would have known, of the defect, if any, in the plaster or in the work of plastering, and with such knowledge accepted the work and paid for it, then your verdict should be for the defendant.

"Reasonable diligence is such diligence as a man of ordinary care and prudence under the same or similar circumstances would exercise.

"Neither acceptance of work nor final payment therefor is any acceptance of defective work or improper materials—if such defective work or improper materials was not known—or in the exercise of reasonable diligence could not have been known at the time of such payment or acceptance.

"If your verdict is for the plaintiff, you should find for him in such amount as in your judgment: (1) The reasonable worth of restoring the plastering so as to make said plastering conform to the contract between plaintiff and defendant as defined in these instructions. (2) The fair and reasonable cost of any painting which from the evidence you may believe was made necessary solely by any defective condition of the plastering and the remedying thereof. (3) The fair and reasonable amount of any rent which you may believe from the evidence was actually lost to the plaintiff because of the defective plastering and the remedying thereof. (4) The fair and reasonable amount of any cleaning which from the evidence you may believe was necessitated solely by reason of the said defective plastering or the remedying thereof.

"And you will find these amounts, if any you find, separately and consider only such damages as, under these instructions, are the direct and proximate result of any defective plastering as herein defined.

"If your verdict is for the defendant you will simply so state."

*J. Clarence Taussig* for, appellant.

(1) There was no substantial evidence to support the verdict of the jury; hence, it is the duty of the appellate court to set that verdict aside. Case v. Espenschied, 69 S. W. 276; Robbins v. Phillips, 68 Mo. 100; Ackley v. Staehlin, 56 Mo. 558; Schulte v. Railway, 5 Mo. App. 578; State v. Hayden, 141 Mo. 311. (2) The trial court erred in instructing the jury to find for

defendant if they found "that any damage to plaintiff, if such there be, was due to some other cause than defective material or unskillful workmanship." Collier v. Swinney, 16 Mo. 484; Davis v. Smith, 15 Mo. 468; Harrison v. Railway, 74 Mo. 364; School Trustees v. Benton, 27 N. J. Law 513; Dermott v. Jones, 2 Wall. 1; Whittemore v. Sills, 76 Mo. App. 248; Taylor v. Steamboat Co., 20 Mo. 254. (3) The court committed error in refusing plaintiff's first instruction. Bridge Co. v. Hamilton, 110 U. S. 108; Hoe v. Sanborn, 21 N. Y. 552; 29 Am. and Eng. Ency. of Law (1 Ed.), 890; Lee v. Sickles Saddlery Co., 38 Mo. App. 201. (4) The court committed error in its instructions intended to cover the entire case in failing to instruct the jury that the work done by the defendant should be reasonably fit for the purposes of a dwelling house. Bridge Co. v. Hamilton, supra; Hoe v. Sanborn, supra; 29 Am. and Eng. Ency. of Law (1 Ed.), 890; Lee v. Sickles Saddlery Co., 38 Mo. App. 201. (5) Instructions by the court on its own motion intended to cover the whole case should be based on the entire evidence. Failure to do this presents a case of misdirection. Lee v. Sickles Saddlery Co., 38 Mo. App. 201; Mansur v. Botts, 80 Mo. 651; Bank v. Murdock, 62 Mo. 70. (6) The court committed error in admitting evidence, over the objection of plaintiff, to show that plaintiff did not request defendant to do the replastering. Spink v. Mueller, 77 Mo. App. 85.

*W. M. Kinsey* for respondent.

(1) The verdict of the jury is responsive to the issues raised by the pleadings and is supported by substantial evidence. It should not, therefore, be disturbed. (2) It was competent, under the pleadings, for defendant to show that the falling of the plaster was due to a cause wholly different from that alleged in the petition. Testimony to this effect disproved the

facts upon which plaintiff sought to recover. Young v. City of Kansas, 27 Mo. App. 118; Bliss on Code Pl., sec. 329. (3) Plaintiff's petition does not allege the breach of any implied condition or warranty arising out of the contract sued on, if such condition or warranty can be said to arise out of an express contract. His evidence did not proceed upon that theory. Hence, the court did not err in refusing to instruct the jury "that the work done by the defendant should be reasonably fit for the purposes of a dwelling house." (4) The plaintiff can not try his case upon one theory in the court below and secure a reversal upon another here.

REYBURN, J.—1. The plaintiff at the threshold of the case asks that the verdict of the jury be set aside on the ground that there was no substantial evidence to sustain it, but the record discloses abundant foundation in the testimony for the verdict rendered, and being supported by substantial evidence, it is therefore conclusive as to questions of fact, and the action of the trial court in overruling the motion for new trial of plaintiff upon this ground was fully warranted. An appellate court will not reverse nor disturb a judgment unless the verdict upon which it is based is entirely unsupported by substantial evidence.

2. Plaintiff criticises the instructions given by the court, directing the jury to find for defendant if they found that the defects in plastering the houses were not due to a lack of ordinary skill and care, either in mixing or applying the plastering, but were due to the rapid drying out of such plastering by reason of the excessive heat then prevailing, which would have permitted the jury to find for the defendant if they concluded from the evidence that the plastering put on in hot weather dried out too rapidly and consequently crumbled, but the plaintiff had predicated his right of recovery upon the two-fold allegation that the

material furnished for plastering the buildings was
not first-class, but was inferior in quality, and that the
work of plastering was not performed in workmanlike
manner, and having restricted himself to such causes
of action was not entitled to recover if the falling of
the plaster was due to any other or different cause or
causes from those assigned in the petition, though un-
der proper allegations and testimony defendant might
have been responsible under the contract for damages
produced by such additional causes.    McCormick v.
Transit Co., 154 Mo. 191; Whipple v. Loan Association,
55 Mo. App. 554, and many authorities therein re-
ferred to.

3.    For the same reasons plaintiff's instructions
presenting the theory of a breach of any implied war-
ranty arising out of the contract in suit, if indeed such
implied warranty can be injected into such an express
contract, were properly refused, as neither the petition
nor the evidence introduced at the hearing presented
any such proposition, and as before stated, the issues
presented by the instructions in the trial must be con-
fined within the limits established by the pleadings.

4.    Plaintiff further    assigns    as error that the
trial court permitted defendant, over the objections of
plaintiff, to introduce testimony that defendant was not
notified of the fall of the plaster, nor requested to per-
form the work of repairing.    The instructions of the
court to the jury diverted the mind of the jury from
this evidence, if incompetent, and directed its attention
to the relevant evidence bearing upon the issues pre-
sented, and in obedience to the instructions of the
court, the jury must be presumed to have confined its
deliberations to the issues submitted by the instruc-
tions, and this evidence, if inadmissible, could not have
influenced its verdict.    To assume that the jury was
influenced by this evidence, we must conclude that it
was not guided by the instructions, but traveled out-
side to consider evidence that had no bearing upon the

issues of fact submitted. Under the instructions the verdict being for the defendant, the jury must have found that he had complied with the contract, or that the plastering fell not from defective material or imperfect workmanship, but from the effect of the elements, and therefore this evidence, even if inadmissible, which is at least doubtful, did not affect the verdict. No material injury was worked by the admission of such evidence, and the judgment of the lower court is accordingly affirmed. *Bland, P. J.,* and *Goode, J.,* concur.