## SARAH V. HUNT, Respondent, v. ANCIENT ORDER OF PYRAMIDS, Appellant.

### Kansas City Court of Appeals, February 1, 1904.

APPELLATE AND TRIAL PRACTICE: Weighing Evidence: Court's Discretion. When there is substantial evidence to sustain a verdict the appellate court will not weigh it; that is the duty of the jury and the trial court. The trial court has a wide range of discretion, which will not be supervised except in cases of clear abuse. (Cases considered.)

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*S. A. Wright* and *C. G. Burton* for appellant.

(1) When unsupported by the evidence, or especially when against the evidence, or when an injustice has been done, it is the duty of the trial court to set aside the verdict and grant a new trial. Bank v. Arm-

strong, 92 Mo. 265; Rickford v. Martin, 43 Mo. App. 597; Lawson v. Mills, 130 Mo. 170; Schmidt v. Railroad, 149 Mo. 269; Robinson v. Robinson, 65 Mo. App. 209; Taylor v. Railroad, 163 Mo. 183; Lockwood v. Ins. Co., 47 Mo. 50. (2) The appellate court will interfere whenever the discretion of the trial court in overruling a motion for a new trial has been arbitrarily or unsoundly exercised; or wrought manifest injustice; or whenever there is no substantial evidence to support the verdict, or when the inferences drawn by the jury are unreasonable or whenever the verdict is obviously the result of passion, prejudice or partiality. Reid, Murdock & Co. v. Lloyd & Mooreman, 61 Mo. App. 646; Whitsett v. Ransom, 79 Mo. 258; Bank v. Wood, 124 Mo. 72; O'Donnell v. Railroad, 7 Mo. App. 190; Lionberger v. Pohlman, 16 Mo. App. 392; State v. Young, 119 Mo. 495; State v. Prendible, 165 Mo. 329; Taylor v. Fox, 16 Mo. App. 527; Walton v. Railroad, 49 Mo. App. 620; Powell v. Railroad, 59 Mo. App. 335; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Lovell v. Davis, 52 Mo. App. 342.

*Scott & Bowker* for respondent.

(1) Where a party fails to demur to the evidence and offers an instruction on the theory that there is evidence to support a certain issue, he can not complain in the appellate court of an insufficiency of testimony to support the verdict. Inglehardt Co. v. Burrell, 66 Mo. App. 117; Seitler v. Bischoff, 63 Mo. App. 157; James v. Hicks, 76 Mo. App. 108; Hopkins v. Woodmen, 94 Mo. App. 402. (2) Where there is any testimony to support a verdict, the appellate court will not set it aside. Taylor v. Short, 38 Mo. App. 21; Tower v. Pauley, 76 Mo. App. 287; State v. Jacobs, 152 Mo. 565; James v. Insurance Company, 148 Mo. 1. (3) The appellate courts do not weigh the testimony and will not interfere with the discretion of the trial courts in re-

fusing to grant a new trial on the ground that the verdict is against the weight of the evidence. Crossan v. Crossan, 169 Mo. 631; State v. Gleason, 172 Mo. 259; State v. Jacobs, 152 Mo. 565.

ELLISON, J.—The plaintiff is the widow of W. T. Hunt, deceased, who had issued to him by defendant a benefit certificate of life insurance payable to her for $1000. On Hunt's death defendant refused payment, whereupon she brought this action and prevailed in the trial court.

The sole ground for the appeal is the refusal of the trial court to sustain the motion for new trial, and the sole reason urged by defendant why it should have been sustained is that there was not sufficient evidence upon which to base the verdict. The certificate provided that if Hunt committed suicide no recovery could be had thereon. The defense was that he did commit suicide, which was denied by plaintiff, and that was the sole issue to which the evidence in the case was addressed. The theory of the defense is that the deceased was somewhat unbalanced in mind resulting from sickness or sunstroke, or both, and that on the day of his death he was depressed because of his wife's intention to leave home for a visit to friends and relatives in Colorado. That being in such mental condition, he purchased a pistol at a store in the city of Nevada where he lived and returned home to kill himself. That members of his family seeing he had the pistol, endeavored to get it from him and failed and that he then shot himself. The theory of the plaintiff is that he was not mentally wrong. That on the day in question he was in good health and usual spirits. That he bought the pistol to kill some troublesome and annoying stray cats that were prowling about the premises. That the endeavor to have him give up the pistol was not to prevent his using it on himself, but to prevent annoyance and fright to the family and to boarders in the house, some of whom were sick. That in

slipping or stumbling and involuntarily throwing up his arms, the pistol was accidentally discharged into his head, causing his death.

There is no doubt that the evidence given in behalf of the defendant made a strong case of suicide.   So strong, indeed that if the jury had returned a verdict for defendant, no one could have called it in question. There was evidence and circumstances going to show that plaintiff, her sister and her mother knew the moment they saw deceased with the pistol that he intended bodily harm to plaintiff or to himself, or both.   It showed that plaintiff first saw the pistol while they were alone in the parlor and that she struggled to get it from him when it was discharged, perhaps accidentally, but the report alarmed the others and the sister seems to have immediately thought, without being told, that he had attempted plaintiff's life. Plaintiff's mother and sister followed deceased out of the house. The mother seeing the pistol in his hand asked him to give it up. It was again discharged, perhaps accidentally, but great excitement existed and the women were crying aloud and someone called a man passing along the street to go for a policeman, which he did.   One or more neighbor women came over and all seemed to recognize that an extraordinary and terrifying condition prevailed.   It was at this point that he shot himself and fell in the yard.

But when the case was thus made for defendant, it may be even stronger than we have put it, the plaintiff introduced herself, mother and sister and others. Their testimony went directly to support the theory in her behalf which we have already stated.   If the jury believed these witnesses their testimony undoubtedly supported the verdict.   Plaintiff's mother testified that when she saw deceased in the yard, near the porch or platform entrance to the kitchen, she standing in the kitchen door, the pistol "went off" and he said, "Oh, I didn't go to do that."   She then told him to give the pistol to her

and he turned tawards her and started to step up on the platform, as she thought, to hand it to her, but as he stepped up he seemed to lose his balance; one expression of the witness was that he "stepped off backwards; he lost his balance." At any rate, he fell, or stepped backwards off of the platform, and as he did so, his hands were thrown up and while in that falling position the discharge of the pistol occurred which sent the ball through his head, going in on the right and coming out on the left side. In addition to the affirmative testimony there are two circumstances which the jury could well consider in behalf of plaintiff's theory. One is that if deceased was bent on killing himself, he had an opportunity to do it before his action attracted attention, and even afterwards while in the yard, before the fatal discharge. The other is that the physician who was immediately called, testified that there was no burning of the hair or powder marks on the head—nothing but the entrance of the bullet. That fact would indicate that the pistol was fired at arm's length; an unusual and uncertain way for a suicide. It ought furthermore to be considered that the jury could have believed deceased was mentally unsound and that his action was as detailed by some of the testimony in defendant's behalf, and yet the fatal result have come about by accident, as described by plaintiff's mother.

When there is any substantial evidence to sustain the verdict, the appellate court will not weigh it; that is the duty of the jury and trial court. Crossan v. Crossan, 169 Mo. 637; State v. Gleason, 172 Mo. 259; State v. Jacobs, 152 Mo. 565.

The law as to the duty of courts on appeal in cases involving the question of the sufficiency of evidence to sustain a verdict, has been gathered and set forth by the respective counsel in their briefs. But in considering such cases, it should not be forgotten that a trial court has a far wider range of discretion than has an appellate court. The former has a right to pass upon the weight

of testimony, while the latter has not. And its discretion, except in cases of clear abuse, will not be supervised. And when a point is made on appeal, as to the sufficiency of evidence the appellate court always has in view the fact, that the trial judge with more power and better opportunities for correct judgment has refused to interfere. Ried v. Ins. Co., 58 Mo. 421; Bank v. Armstrong, 92 Mo. 265; State v. Young, 119 Mo. l. c. 525; Hull v. Railroad, 60 Mo. App. 593; Reid v. Lloyd, 61 Mo. App. 646.

The point made in argument by defendant as to the duty of the trial court to promptly grant another trial when it considers the verdict to be against the weight of the evidence and that injustice has been done, is sustained by a large number of decisions collected by counsel. As already stated, we fully recognize that such is the duty of that court. But in this case, there is substantial evidence to support the verdict; and we have no means, therefore, of ascertaining that the trial court did not fully perform its duty. We must presume that it did, until it is made clearly to appear that it did not. The rule governing appellate courts may be stated to be this: that whenever the record discloses substantial evidence which, if believed, will support the verdict rendered, then an appellate court can not say that the trial court had not exercised its discretion fairly and properly. The appellate court presumes that the trial court has performed its duty as the law directs. That presumption abides up to the point of a total absence of evidence of substantial character.

The judgment, with the concurrence of the other judges, is affirmed.