## WILLIAMSON v. SALT LAKE & OGDEN R. CO.

No. 3150.   Decided April 16, 1918.   (172 Pac. 680.)

1. CARRIERS — PERSONAL INJURIES TO PASSENGERS — NEGLIGENCE — QUESTION FOR JURY. In an action for injuries sustained by plaintiff while attempting to board defendant's passenger train, the question of defendant's negligence *held,* under the evidence, for the jury. (Page 87.)

2. CARRIERS—"RES IPSA LOQUITUR"—"RAISES"—INSTRUCTION. An instruction, in effect, that the sudden starting of the car "raises" (that is, compels the inference of negligence), was erroneous, and should have been "warrant" or "authorize," an inference of negligence, since the principle of res ipsa loquitur does not relieve the plaintiff of the burden of proof, or raise any presumption in plaintiff's favor, but simply entitles the jury, in view of all the circumstances and conditions as shown by plaintiff's evidence, to infer negligence, and to say whether, upon all the evidence, the plaintiff has sustained his allegation. (Page 88.)

3. CARRIERS—"RES IPSA LOQUITUR." The doctrine of res ipsa loquitur, as applied to the sudden starting of a passenger coach, warrants or authorizes an inference or assumption that the sudden starting was due to the negligence of those controlling the train, but does not compel such inference or presumption. (Page 90.)

4. CARRIERS—DOCTRINE OF "RES IPSA LOQUITUR"—APPLICABILITY. Where the train which was alleged to have been suddenly started with a jerk, which it was claimed caused the injury, was under the exclusive management and control of defendant, and there was no evidence or explanation on defendant's part as to the sudden starting, the doctrine of res ipsa loquitur was applicable, since, if something unusual or extraordinary occurred in the operation and management of the train which resulted in an injury to a passenger,

the occurrence warranted, but did not compel, an inference that it was due to the negligence of defendant, unless it was made to appear that the occurrence was due to some other cause than the one assumed or inferred, and for which defendant was not responsible. (Page 91.)

5. APPEAL AND ERROR—ERRONEOUS INSTRUCTIONS—REVERSIBLE ERROR. In action for injuries due to the sudden starting of a train, where defendant was unable to explain the sudden starting, instructing that the sudden starting "raises" an inference of negligence was reversible. error.   (Page 91.)

Appeal from District Court of Weber County, Second District; *Hon. A. E. Pratt,* Judge.

Action by James Williamson against the Salt Lake & Ogden Railway Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED and remanded with directions to grant new trial.

*Boyd, De Vine & Eccles* and *Arthur Woolley* for appellant.

*Jno. G. Willis* for respondent.

FRICK, C. J.

Plaintiff commenced this action on the 8th day of March, 1916, to recover damages for personal injuries which he alleged he received through the negligence of the defendant on June 14, 1912.   In his complaint he alleges that he was injured while attempting to board one of defendant's passenger trains at Clinton, a station some distance south of Ogden City. The acts of negligence relied on are alleged as follows:

"That while plaintiff was such passenger, and in the act of boarding said train at said station of Clinton, and while he was upon the lower step of the rear platform of said car, the said car was, through the negligence of defendant, suddenly started and put into quick motion, without allowing plaintiff sufficient, or any, time to safely get upon said car; and in consequence thereof, and of the negligence of the servants of defendant conducting and operating said car, plaintiff was

violently thrown against the rear end of the platform of said car, whereby he sustained great and permanent injuries, as follows:  *  *  *''

The alleged injuries are then described, and plaintiff adds a prayer for judgment.

The defendant, upon the ground of want of knowledge or information, denied that plaintiff was a passenger on defendant's train; that he was injured as alleged, or at all. As an affirmative defense, defendant averred that, if plaintiff was injured as alleged, such injury was caused wholly and solely through his own negligence, etc.

Upon those issues the case was tried, and at the conclusion of the evidence the defendant requested the court to direct the jury to return a verdict in its favor for the reasons: (1) That the evidence is insufficient to justify a finding of negligence on the part of the defendant; (2) that the alleged injuries were caused through plaintiff's own negligence and want of ordinary care; and (3) that the evidence shows that the alleged injuries were caused by some cause other than the alleged accident.

The court refused to so charge, but submitted the cause to the jury upon the evidence, and six out of eight jurors impaneled returned a verdict in favor of the plaintiff. Judgment was duly entered upon the verdict, and the defendant appeals.

While many errors are assigned, yet counsel in their brief have argued but two.

Counsel insist that the court erred in refusing the request to direct a verdict in favor of the defendant for the reasons before stated. The plaintiff was the only witness produced who seemed to know anything concerning the happening of the accident. While the conductor and brakeman in charge of the train on the day of the alleged accident were called by the defendant, neither of them knew anything of the happening of the accident, and neither of them knew the plaintiff or that he was a passenger on the train at the time in question. No other witness was called who either saw or knew anything about the accident. The plaintiff, who was a plumber engaged

in that work, in substance testified that at about twenty minutes before five o'clock on the afternoon of the 14th day of June, 1912, and while he was on the steps of one of the cars of defendant's train, and while attempting to board the train carrying his plumbing tools, the train was suddenly started and he was injured. In answer to his counsel's questions he described the accident as follows:

"Well, when the train came into the depot I was standing there and they stopped; and while I was in the act of getting on the train, I picked up my tools off the ground, put them on my shoulder, and put my gasoline furnace on my arm like that, and this hand grasped the— Q. Which hand is that? A. Left hand grasped the handrail, and just as I was taking a step up—I had stepped up on the right foot first—and just as I was taking the step up, before my left foot got on the step, the car started off with a jerk."

The witness said he was thrown against a ledge at the end of the car, and that he thereby injured his hip, etc.

The plaintiff, although he alleged he was injured in the manner aforesaid on June 14, 1912, nevertheless made no claim of any kind against the railroad company until the 22d day of November, 1915, and thereafter brought this action as before stated.

Counsel insist that the evidence is insufficient to justify a finding of negligence on the part of the defendant. While it is true that the evidence of negligence in some respects is not strong, yet, in view of the high degree of care that a common carrier owes to his passenger, we are not prepared to say that there was no substantial evidence of negligence produced by the plaintiff. If there is any substantial evidence of negligence on the part of the defendant, and that such negligence was the proximate cause of the injury complained of, then the question is one of fact for the jury and not one of law for the court. While there are a number of circumstances in this case, which we need not pause to state here, from which the jury might have found the facts in favor of the defendant, yet the effect that should be given to such circumstances was purely a question to be determined

by the jury. It follows, therefore, that the district court did not err in refusing to direct the jury to return a verdict for the defendant, and in submitting the case to the jury.

It is, however, also insisted that the court erred in charging the jury. The court charged the jury as follows:

"The mere fact, if you find it to be a fact, that plaintiff was injured at the time and place mentioned, does not justify an inference either that the plaintiff was negligent or the defendant was negligent; yet if you believe from a preponderance of the evidence that plaintiff boarded the car at Clinton, having a mileage ticket with which to pay his fare and intending to take passage therein, *and while in the act of getting on the car he was injured by the sudden starting of the car, the sudden starting of the car under such circumstances raises an inference of negligence on the part of defendant, though not a conclusive one, and the law casts upon the defendant the burden of showing that such starting was not caused by, the negligence of the defendant or its servants in control of the car,* or that plaintiff was negligent and his negligence was a proximate cause of or contributed to his injury. Nevertheless, whether or not the defendant was negligent, and whether or not the plaintiff was negligent, are questions of fact to be determined by you from all the evidence in the case, and in the light of these instructions as to the law applicable thereto." (Italics ours.)

Counsel excepted to the charge, and especially to that portion which is given in italics. It will be observed that in the instruction excepted to the district court informed the jury respecting the effect of the maxim res ipsa loquitur. While expressions similar to those used by the court in the instruction are often met with in the written opinions of the courts, yet it is not always safe to charge a jury in the precise language used by the justices in writing opinions. Opinions are not intended as instructions to laymen or jurors, but they are intended for judges and lawyers who are learned in the law. It will be observed that the court told the jury in express terms that the "sudden starting of the car  *  *  *  raises an in-

ference of negligence on the part of the defendant,   *   *   *
and that the law casts upon the defendant the burden of show-
ing that such starting was not caused by the negligence of the
defendant.'' The jurors were thus informed in positive terms
that the sudden starting of the car raised an inference of neg-
ligence, and that the burden was cast on the defendant to
explain away or to dissipate such inference. The natural and
obvious meaning of the language of the instruction is, and a
jury of laymen, we think, would so understand it, that from
the sudden starting of the car an inference or presumption of
negligence necessarily arose, and that, unless the defendant
produced evidence to explain the sudden starting of the car,
the plaintiff was entitled to a verdict as a matter of course.
In other words, if the jury believed the car was suddenly
started, it then became their duty to infer negligence. If,
therefore, the agents and servants of the defendant (which is
a corporation and can and does know and act only by and
through its agents and servants) knew nothing about the hap-
pening of the alleged accident and the sudden starting of the
car, and for that reason could not explain why the car was
started, as claimed by plaintiff, the jury, under the instruc-
tion, would assume that only one result was permissible, and
that was to return a verdict for the plaintiff. Much has been
said and written concerning the effect of the doctrine of res
ispa loquitur and when it is applicable. The clearest state-
ment concerning the effect of that doctrine that the writer has
seen is found in the somewhat recent case of *Sweeney* v. *Erv-
ing*, 228 U. S. at page 240, 33 Sup. Ct. at page 418, 57 L. Ed.
815, Ann. Cas. 1914D, 905, where the Supreme Court of the
United States, speaking through Mr. Justice Pitney, states
what is meant by the doctrine in the following words:

''In our opinion, res ipsa loquitur means *that the facts of the occur-
rence warrant the inference of negligence, not that they compel such an
inference; that they furnish circumstantial evidence of negligence where
direct evidence of it may be lacking, but it is evidence to be weighed,
not necessarily to be accepted as sufficient;* that they call for explana-
tion or rebuttal, not necessarily that they require it; that they make a
case to be decided by the jury, not that they forestall the verdict. Res
ipsa loquitur, where it applies, does not convert the defendant's general

issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff.

"Such, we think, is the view generally taken of the matter in well-considered judicial opinions." (Italics ours.)

In the foregoing statement the distinction between the court charge in the case at bar and what a charge in a case where the doctrine is applicable should be is clearly and admirably stated.

In addition to the foregoing, other well-considered statements of the doctrine and its application are found in 4 Words and Phrases, Second Series, 318, where it is said:

"The principle of 'res ipsa loquitur' renders the question of negligence one for the jury, but does not relieve the plaintiff of the burden of proof. It does not raise any presumption in plaintiff's favor, but simply entitles the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence, and to say whether, upon all the evidence, the plaintiff has sustained his allegation."

It is further said:

"The doctrine of 'res ipsa loquitur' does not dispense with the rule that the person alleging negligence must prove it; but it is simply a mode of proving negligence, and does not change the burden of proof."

Numerous cases in support of the foregoing texts are cited, which we need not refer to here.

In the instruction in question the district court in effect told the jury that the sudden starting of the car "raises," that is compels, an inference of negligence. That is not the law. The law is that, inasmuch as the train was under the exclusive management and control of the defendant's servants, the sudden starting of the car warranted or authorized the jury to infer or assume that the sudden starting was caused through the negligence of those who then managed and controlled the train, and not that such starting necessarily raised such an inference or presumption. In the case at bar, in view that the defendant was unable to explain the sudden starting of the car by reason that it knew nothing concerning the accident, the jury no doubt assumed that a finding of negligence necessarily followed as a matter of law. The sudden starting complained of merely authorized the jury to infer

negligence, but did not require it to so find.  The jury, without any evidence or explanation on the part of the defendant, were nevertheless, under the law, authorized to find that there was no negligence.  The jury, therefore, should have been instructed that if they found the car was suddenly started, that fact, standing alone, would warrant or authorize an inference of negligence on the part of the defendant, and unless the sudden starting was explained by it the jury would be justified in returning a verdict for the plaintiff upon that issue.

Counsel for defendant, however, also contend that the doctrine of res ipsa loquitur had no application in this case.  In this contention counsel are in error.  Here the train, which was alleged to have been suddenly started "with a jerk," and which it is claimed caused the injury, was under the exclusive management and control of the defendant.  If, therefore, something unusual or extraordinary occurred in the operation and management of the train which resulted in injury to a passenger, the occurrence warranted, but did not compel, an inference that it was due to the negligence of the defendant, unless it was made to appear that the occurrence was due to some other cause than the one assumed or inferred, and for which the defendant was not responsible.

We desire to add that it does not necessarily follow that because similar language is sometimes used, or may be used, in a charge to the jury, that for that reason alone the judgment in a particular case would, under all circumstances, be reversed.  It might well be that upon the whole record it would appear that no prejudice resulted notwithstanding the use of such language, and in such event the judgment would not be reversed.  In view of the peculiar circumstances of this case, however, to which we have referred, we are not satisfied that no prejudice resulted from the giving of the instruction complained of, and hence, for the reason stated, the judgment is reversed, and the cause is remanded to the district court of Weber County, with directions to grant a new trial.  Appellant to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.